FILED COPY

IN THE UNITED STATES DISTRICT COURT CLERKS OFFICE
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

2004 MAY 25  A II: II

U.S. DISTRICT COURT
DISTRICT OF MASS.

Jackie Cole, Lorraine Cook, Dorothy Falk, Anita
Farrington, Loretta Fisher, Gwendolyn Hall, Carol
Lunt, Wanda Merkins-Radford, Rhonda Rowe, Irene
South, Katherine Tigue, Elizabeth Austin, Diana Britton,
Lela Caward, Frances Delgado, Patricia Free, Dawn
Herrick, Leona Johnstone, Shirley Brown, Sandra
Smith,

                                      Plaintiff

v.

Indevus Pharmaceuticals, Inc., F/K/A Interneuron
Pharmaceuticals, Inc.; Wyeth, Inc., F/K/A American
Home Products Corporation; Wyeth Pharmaceuticals,
Inc. F/K/A Wyeth-Ayerst Pharmaceuticals, Inc., A
Division of American Home Products Corporation; and
Boehringer Ingelheim Pharmaceuticals, Inc.

                                      Defendants.

CIVIL ACTION

NO. _____

**04   11086 GAO**

## NOTICE OF REMOVAL

Defendant Wyeth, formerly known as American Home Products Corporation and

including defendant Wyeth Pharmaceuticals, Inc. (formerly known as Wyeth-Ayerst

Pharmaceuticals, Inc.), files this Notice of Removal removing this action from the Superior

Court of the Commonwealth of Massachusetts, Middlesex County, to the United States District

Court for the District of Massachusetts, Eastern Division.

### Preliminary Statement

Plaintiffs allege that they were injured by the diet drugs fenfluramine (Pondimin®) and

dexfenfluramine (Redux™). Wyeth sold Pondimin and Redux. Indevus Pharmaceuticals, Inc.,

("Indevus")[1] was involved in the development and marketing of Redux, but not Pondimin. Boehringer Ingelheim Pharmaceuticals, Inc ("Boehringer") was involved in the production of Redux, but not Pondimin.

All federal diet drug cases have been consolidated before the United States District Court for the Eastern District of Pennsylvania (the "MDL Court") since 1997. The MDL Court has developed substantial expertise with respect to the legal and scientific issues presented in diet drug cases. In 2000, the MDL Court approved a nation-wide class action settlement (the "National Settlement"). The settlement class includes all diet drug users except for those who opted out of the class. Plaintiffs allege that, although they are members of the settlement class, they may sue under provisions of the National Settlement that permit class members to file lawsuits in certain circumstances.[2]

There has been an explosion of cases in the diet drug litigation in which plaintiffs attempt to evade the MDL Court by filing lawsuits in state court, fraudulently joining resident or non-diverse defendants against whom there is no reasonable possibility of recovery and no good-faith intent to pursue a claim, and misjoining in one complaint the claims of dozens or even hundreds of plaintiffs, only one, or a small number, of whom are not diverse from Wyeth. The plaintiffs' bar apparently is attempting to evade the MDL Court and remain in state courts despite the presence of diversity between the plaintiffs and Wyeth, the real defendant in these

---

[1] Indevus was known as Interneuron Pharmaceuticals, Inc., until April 2002.

[2] It is yet to be determined whether plaintiffs meet the medical and other criteria for being permitted to assert such claims under the terms of the National Settlement. If they do not meet those criteria, an existing injunction entered by the MDL Court bars and enjoins plaintiffs from asserting their claims. *Brown v. Am. Home Prods. Corp.*, Nos. 1203 and 99-20593, 2000 WL 1222042, at *72 (E.D. Pa. Aug. 28, 2000).

cases.  The MDL Court addressed this problem in *Anderson v. American Home Products Corp.*,

220 F. Supp. 2d 414 (E.D. Pa. 2002), explaining:

> What has been transpiring can only be characterized as a *sham*, at
> the unfair expense not only of AHP [now known as Wyeth] but of
> many individuals and small enterprises that are being unfairly
> dragged into court simply to prevent the adjudication of lawsuits
> against AHP, the real target, in a federal forum.

*Id.* at 425 (emphasis added).  The Court cautioned that "'so long as federal diversity jurisdiction

exists . . . the need for its assertion may well be greatest when plaintiff tries hardest to defeat it.'"

*Id.* (quoting *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)).

Unfortunately, the sham that the MDL Court tried to stop in *Anderson* continues.  For

example, last summer, in a desperate bid to avoid the MDL Court, plaintiffs' attorneys—

including several of the plaintiffs' attorneys involved in these lawsuits[3]—filed 168 cases naming

more than 14,000 plaintiffs in state court in Fulton County, Georgia, even though only 5 percent

of the plaintiffs were Georgia residents.  The complaints each named several resident Wyeth

employee defendants and one or a small number of plaintiffs non-diverse from Wyeth.  The Hon.

Robert L. Vining of the U.S. District Court for the Northern District of Georgia held that the

resident defendants were fraudulently joined and that it was improper to join the claims of one or

two plaintiffs non-diverse from Wyeth with the unrelated claims of plaintiffs from other states.

Judge Vining denied plaintiffs' motions to remand, and the cases were transferred to the MDL

Court for discovery.  *See* Order, *In re Fen-Phen Litig.*, No. 1:03-MD-1-RLV (N.D. Ga. Oct. 14,

---

[3] Several of the law firms that have recently indicated that they were filing diet drug cases in Massachusetts also
were involved in the plaintiffs' bar's unsuccessful efforts in Georgia to keep diet drug cases out of the MDL Court:
Aylstock, Witkin & Sasser; Hackard & Holt; and Williams Bailey.

2003) (Exhibit 1)[4]. Judge Vining's decision followed the rationale of a decision by the MDL

Court denying motions to remand in six cases involving 126 plaintiffs removed from Georgia

state court. *See Weaver v. Am. Home Prods. Corp.*, No. 03-20153, Pretrial Order No. 2946 (E.D.

Pa. July 30, 2003) (Exhibit 2).

With their efforts to funnel plaintiffs to Fulton County, Georgia, soundly rejected, the

plaintiffs' bar is now attempting to funnel plaintiffs from around the country to Middlesex

County, Massachusetts. The plaintiffs' bar has recently filed 195 cases on behalf of 2,624

plaintiffs, only 41 of whom are from Massachusetts, and has indicated its intent to file cases on

behalf of a total of 4,598 plaintiffs. Most cases were filed on behalf of approximately 10-15

plaintiffs. These plaintiffs come from virtually every state in the union—from New York to

California and from Florida to Maine. Plaintiffs proffer no legitimate reason for why they would

bring suit in a jurisdiction as distant as 3,000 miles from their homes.

The obvious reason is to attempt to defeat federal jurisdiction. Plaintiffs name Indevus, a

citizen of Massachusetts, even though plaintiffs have no reasonable basis for a claim against this

defendant due to the expiration of the statute of limitations, and plaintiffs have no good faith

intent to pursue a claim against Indevus, a company with limited resources that has been named

in thousands of diet drug cases but has never been taken to trial or judgment. In certain cases,

plaintiffs also attempt to defeat jurisdiction by naming a single plaintiff or a small number of

plaintiffs who are non-diverse from Wyeth, the real defendant in this case, and then attempting to

leverage that non-diversity of a single plaintiff to defeat federal jurisdiction as to all plaintiffs.

---

[4] Exhibits B and 1-8 to this Notice of Removal were filed in both hard copy and on CD-Rom in *Andrus et al. v. Indevus Pharmaceuticals et al.*, No. 04-CV-10911-GAO, and are incorporated here by reference.

This case is part of the scheme described above. It incorporates the disparate claims of plaintiffs from several states. Plaintiffs attempt to defeat federal jurisdiction as to these plaintiffs by fraudulently joining Indevus as a defendant.

Plaintiffs' ploy must fail. As demonstrated below, Indevus is fraudulently joined because plaintiffs' purported claims against it are time-barred. The claims of all plaintiffs who are diverse from Wyeth belong in federal court. Wyeth anticipates that plaintiffs will file a motion to remand this case to state court. In response, Wyeth expects to file a motion to stay pending transfer to the MDL Court so that court—which is familiar with the legal and factual issues in these cases as well as the plaintiffs' bar's fraudulent joinder tactics—can decide these common issues consistently.

Pursuant to an existing MDL order, each plaintiff would be severed into a separate action. Following completion of discovery, Wyeth intends to make a motion pursuant to 28 U.S.C. § 1404 to transfer cases by those plaintiffs from jurisdictions other than Massachusetts to the federal courts in plaintiffs' jurisdictions for final disposition. This will protect Wyeth's right to be in federal court and insure that plaintiffs' claims are tried by federal courts in their own jurisdictions, where they belong.

## **The Complaint**

1.

Wyeth is a defendant in a civil action brought against it in the Superior Court of the Commonwealth of Massachusetts, Middlesex County, entitled *Cole, et al. v. Indevus Pharmaceuticals, Inc., et al.*, bearing Civil Action No. 2004 – 01232.

2.

A copy of the Complaint and any process, pleadings and orders filed by the Parties are attached hereto as Exhibit A.

3.

The action was commenced by the filing of a Complaint on or about March 30, 2004, in the Superior Court of the Commonwealth of Massachusetts, Middlesex County.

4.

The Complaint names twenty individual plaintiffs. Based upon the allegations in the Complaint, the plaintiffs are citizens of the following States:

California: Shirley Brown

Kansas: Sandra Smith

Oregon: Elizabeth Austin; Diana Britton; Lela Caward; Frances Delgado; Patricia Free; Dawn Herrick; Leona Johnstone

Washington: Jackie Cole; Lorraine Cook; Dorothy Falk; Anita Farrington; Loretta Fisher; Gwendolyn Hall; Carol Lunt; Wanda Merkins-Radford; Rhonda Rowe; Irene South; Katherine Tigue

5.

The Complaint names as defendants Wyeth (formerly known as American Home Products Corporation) and Wyeth Pharmaceuticals, Inc. (formerly known as Wyeth-Ayerst Pharmaceuticals, Inc.). Another named defendant is Indevus Pharmaceuticals, Inc. (formerly known as Interneuron Pharmaceuticals, Inc.), which was involved with the development of

Redux.  The Complaint also names Boehringer Ingelheim Pharmaceuticals, Inc, which
manufactured Redux.

6.

Wyeth is a Delaware corporation with its principal place of business in New Jersey.
Wyeth Pharmaceuticals, Inc., is a Delaware corporation with its principal place of business in
Pennsylvania.

7.

Based upon the allegations of the Complaint, Indevus is a Delaware corporation with its
principal place of business in Massachusetts.

8.

Based upon the allegations in the Complaint, Boehringer is a Delaware Corporation with
is principal place of business in Connecticut.

### Fraudulent Joinder Standard

9.

The citizenship of fraudulently joined parties is disregarded in determining the existence
of diversity jurisdiction under 28 U.S.C. § 1332 and for determining whether a case may be
removed under 28 U.S.C. § 1441 where there is a resident defendant. *See, e.g., Polyplastics, Inc.
v. Transconex, Inc.*, 713 F.2d 876, 877 (1st Cir. 1983) ("A party fraudulently joined to defeat
removal need not join in a removal petition, and is disregarded in determining diversity of
citizenship."); *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756 (9th Cir. 2002) (holding
that removal is permissible under 28 U.S.C. § 1441 if the resident defendants are fraudulently
joined).

10.

A defendant is fraudulently joined if there is no reasonable possibility of a claim against it. A "mere theoretical possibility of recovery under state law" is not enough. *Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1, 5 (D. Mass. 2001) (citing *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)) ("[T]here must at least be arguably a *reasonable* basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder."). As this Court has held, "the linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a *reasonable basis in law and fact*." *Id.* at 4 (emphasis added).

11.

There is no reasonable basis for a claim against a defendant when the statute of limitations has expired. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1320 (9th Cir. 1998) (holding that a defendant is fraudulently joined when the statute of limitations has run); *Alexander v. Wyeth*, No. 03-20206, Pretrial Order 3230, at 15 (E.D. Pa. Jan. 29, 2004) (Exhibit 3) (same); *Longden v. Philip Morris, Inc.*, 2003 WL 21975365, at *3 (D.N.H. Aug. 19, 2003) (citing *In re Diet Drugs*, 210 F. Supp. 2d 44, 422-23 (E.D. Pa. 2002)) (same).

## Defendant Indevus Is Fraudulently Joined

12.

The presence of Indevus does not defeat removal because plaintiffs have no reasonable basis for a claim against Indevus because any claim against Indevus is time-barred.[5] The statute

---

[5] Under the Settlement Agreement, Wyeth may not plead the statute of limitations, except in certain defined circumstances. The Settlement Agreement does not limit the ability of Indevus or Boehringer (neither of which are parties to the Settlement Agreement) to plead the statute of limitations, nor the ability of Wyeth to demonstrate the

*Footnote continued on next page*

of limitations on a claim seeking recovery for personal injury in Massachusetts is three years regardless of the legal theory on which the claim is brought, G.L. c. 260 § 2A, except a limitations period of four years for plaintiffs' chapter 93A claims, G.L. c. 260 § 5A. The statute of limitations begins to run when plaintiff knew she was injured, or when plaintiff, with the exercise of reasonable diligence, should have known she was injured, whichever is later. "[T]he statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury." *Bowen v. Eli Lilly & Co., Inc.*, 408 Mass. 204, 207, 577 N.E.2d 739, 741 (1990). Furthermore, if a plaintiff "invokes the discovery rule by claiming that her delay in filing suit stems from a failure to recognize the cause of her injuries, [she] bears the burden of proving both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge." *Doe v. Creighton*, 439 Mass. 281, 283, 786 N.E.2d 1211, 1213 (2003) (citing *Riley v. Presnell*, 409 Mass. 239, 243-247, 565 N.E.2d 780 (1991); *Phinney v. Morgan*, 39 Mass. App. Ct. 202, 206, 654 N.E.2d 77 (1995)).

13.

Once a plaintiff knows that she may have been harmed, she is on "inquiry notice" and has the "duty to discover from the legal, scientific, and medical communities whether the theory of causation is supportable and whether it supports a legal claim." *Bowen*, 408 Mass. at 208, 557 N.E.2d at 742 (quoting *Fidler v. Eastman Kodak Co.,* 714 F.2d 192, 199 (1st Cir. 1983)). If a plaintiff is capable of discovering a claim through "ordinary diligence," the statute of limitations

---

*Footnote continued from previous page*

fraudulent joinder of a defendant based on the expiration of the statute of limitations against that defendant. *See Amiker v. Wyeth*, No. 03-20343, Pretrial Order 3391, slip op. at 7 (E.D. Pa. April 2, 2004) (Exhibit 4).

begins to run at the time the duty to inquire is triggered, and not when the plaintiff actually discovers the facts necessary to support her claim against a particular defendant. *Sheila S. v. Commonwealth*, 57 Mass. App. Ct. 423, 428-29, 783 N.E.2d 868, 874 (2003) (holding that plaintiff's knowledge of government agency's involvement was sufficient, at minimum, to stimulate further inquiry into Commonwealth's potential liability, even though plaintiff did not know the facts surrounding agency's negligence).

14.

In this case, plaintiffs' claims against Indevus are barred by the statute of limitations as a matter of law. The last date plaintiffs could have used diet drugs was September 15, 1997, when Wyeth withdrew Pondimin and Redux from the market. Any alleged heart valve injury plaintiffs suffered as a result of diet drugs occurred no later than that date because there is no evidence that heart valve damage possibly associated with diet drugs is latent, meaning that it does not develop after use of the drugs has ceased. *Brown v. Am. Home Prods. Corp.*, Nos. 1203 and 99-20593, Pretrial Order 1415, 2000 WL 1222042, at *46 (E.D. Pa. Aug. 28, 2000) (MDL Court finding "no evidence" of heart valve injuries developing later); *see also Rainey v. Wyeth*, No. 03-20128, Pretrial Order 2886, slip op. at 7 n.4 (E.D. Pa. June 12, 2003) (Exhibit 5) (MDL Court "found that there is no latency period between the time of drug use and injury"); *Alexander v. Wyeth*, No. 03-20206, Pretrial Order 3230, slip op. at 13-14 (E.D. Pa. Jan. 29, 2004) (Exhibit 3) (citing "competent medical evidence" reviewed by Judge Bartle in concluding that diet drugs Pondimin and Redux do not create latent injuries); *French v. Wyeth*, No. 03-20353, Pretrial Order 3281, slip op. at 13 (E.D. Pa. Feb. 18, 2004) (Exhibit 6) (repeating earlier finding that valvular heart disease attributed to diet drug use is not latent). The MDL Court has held that plaintiffs are

collaterally estopped from relitigating the issue of latency. *Id.* Thus, plaintiffs could have discovered their injuries by September 1997 had they gone to a doctor for appropriate testing.

15.

Plaintiffs were put on notice that they should obtain such testing by September 15, 1997 because of massive national and local publicity about the fact that diet drugs may cause heart valve damage. On July 8, 1997, the United States Department of Heath and Human Services issued a Health Advisory and the Mayo Clinic issued a press release concerning health risks possibly associated with the use of diet drugs. The September 15, 1997, withdrawal of the drugs from the market was accompanied by numerous press releases and advertisements. The withdrawal also was accompanied by massive publicity in the national and local media in the areas where each of the plaintiffs resides. *See* Declaration of Sharon L. Taylor (Exhibit 7).

16.

The MDL Court overseeing the diet drug litigation has held that this mass of information put plaintiffs on inquiry notice of their claims as early as September 1997. *Allen v. Wyeth*, No. 03-20310, Pretrial Order 3305, slip op. at 9 (Exhibit 8) ("[W]e find that plaintiffs can reasonably be held to have knowledge of their injuries [and] the cause of their injuries ... as early as September, 1997 and at the latest by March, 2000. Thus their actions accrued and the statute of limitations began to elapse at that time.").

17.

Numerous courts have found publicity to have put plaintiffs on notice of their claims. *See United Klans of Am. v. McGovern*, 621 F.2d 152, 154-55 (5th Cir. 1980) (per curiam) (agency press conference, press release, and publication of a Senate report led to conclusion that "in the exercise of due diligence, plaintiff should have known that it had a potential claim"); *Hughes v.*

*Vanderbilt Univ.*, 215 F.3d 543, 548-49 (6th Cir. 2000) (plaintiff should have known of potential

claim where publicity was extensive); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387,

403-04 (5th Cir. 1998) (as a matter of law, extensive media coverage in the mid-1980's

concerning Agent Orange put plaintiff on notice at that time that she should investigate her

potential claim).

18.

Plaintiffs' fraudulent concealment count is no exception to the fact that plaintiffs' claims

against Indevus are barred by the statute of limitations. The statute of limitations will not be

tolled for fraudulent concealment claims "if the plaintiff has actual knowledge of the facts giving

rise to [her] cause of action" or "the means to acquire the facts on which [her] cause of action is

based." *Stark v. Advanced Magnetics, Inc.*, 50 Mass. App. Ct. 226, 234, 736 N.E.2d 434, 442

(2000); *see also Burbridge v. Board of Assessors of Lexington*, 11 Mass. App. Ct. 546, 549-50,

417 N.E.2d 477, 480 (1981) (citing *Walker v. Soule*, 138 Mass. 570, 572 (1885)); *Lynch v. Signal*

*Fin. Co.*, 367 Mass. 503, 507-08, 327 N.E.2d 732 (1975)) ("[E]stoppel provision of G.L. c. 260,

s 12 is generally not available if the plaintiff is capable of discovering the facts allegedly

concealed."). In this case, plaintiffs not only had the means to learn of their causes of action, but

are charged with knowledge of their claims as a matter of law. *See* discussion, *supra*. The fact

that thousands of plaintiffs filed personal injury claims against Indevus in 1997 and immediately

thereafter shows that plaintiffs had the means to discover the facts underlying their claims.

19.

Further, the supposed "concealment" alleged by plaintiffs is that Indevus has denied

liability in diet drug litigation. However, it is well-established that a company's mere denial of

12

liability for a particular act does not constitute fraudulent concealment. *See Estate of Sarocco v. Gen. Elec. Co.*, 939 F. Supp. 91, 97-98 (D. Mass. 1996). "The defendants' general, repeated public denial of any link between PCB's and cancer does not constitute fraudulent concealment as a matter of law. A defendant is not obliged to acknowledge liability, or to adopt a plaintiff's theory of a case, in order to avoid a defense of this sort." *Id.* Even more specific statements concerning liability do not rise to the level of fraudulent concealment. In *Olsen v. Bell Telephone Labs, Inc.*, representatives of the defendant told the plaintiff that his condition was not permanent and that the substance at issue did not cause the plaintiff's injuries. The court refused to find that defendants' conduct rose to the level of fraudulent concealment. "Unless the defendants 'made representations they knew or should have known would induce the plaintiff to put off bringing suit and . . . the plaintiff did in fact delay in reliance on the representations,' there is no estoppel." *Olsen v. Bell Telephone Labs, Inc.*, 388 Mass. 171, 176, 445 N.E.2d 609, 612 (quoting *White v. Peabody Constr. Co.*, 386 Mass. 121, 134-35, 434 N.E.2d 1015 (Mass. 1982)).

20.

Because the statute of limitations in Massachusetts for plaintiffs' claims expired years ago, plaintiffs allege that the statute of limitations was tolled during the pendency of one or more putative class actions in which Indevus was named as a defendant. *See* Complaint ¶ 7. Plaintiffs base their allegation on a federal antitrust decision, *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), that has not been adopted by the Supreme Judicial Court of Massachusetts. *Massachusetts Elec. Co. v. Massachusetts Comm'n Against Discrimination*, 375

Mass. 160, 165 n.2, 375 N.E.2d 1192, 1197 n.2 (1978).  Over the years, those courts that have

adopted such a tolling rule have carved out numerous exceptions and limitations to the doctrine.

21.

Plaintiffs have no reasonable likelihood of success on their argument that the statute of

limitations was tolled because numerous independent obstacles would block any effort by

plaintiffs to invoke *American Pipe* tolling here.

- Neither the Supreme Judicial Court of Massachusetts nor the state legislature has
  adopted *American Pipe* tolling.  It is highly unlikely that the Supreme Judicial Court
  would change the law to adopt *American Pipe* tolling in any type of case because
  equitable tolling is disfavored in Massachusetts.  The Supreme Judicial Court has
  held that "[e]quitable tolling is used only sparingly, and is generally limited to
  specified exceptions." *Shafnacker v. Raymond James & Assocs., Inc.*, 425 Mass. 724,
  728, 683 N.E.2d 662, 665 (1997) (citation omitted).  *American Pipe* tolling is not one
  of those "specified exceptions."

- Even if Massachusetts courts might otherwise adopt *American Pipe*, it is highly
  unlikely that they would do so for personal injury actions.  The vast majority of cases
  considering the issue have rejected the application of *American Pipe* to personal
  injury cases.

- Even if plaintiffs could persuade Massachusetts courts to adopt *American Pipe* and to
  do so in a personal injury case, it is overwhelming likely that the Courts would limit

any tolling effect to the first class action that was filed and that plaintiffs could not "stack" multiple successive class actions to toll the statute of limitations indefinitely.

- Even if plaintiffs could persuade Massachusetts courts to look beyond the first filed class action, it would not help them. That is because Massachusetts courts would likely prohibit plaintiffs from relying on any class action pending outside Massachusetts.

- Plaintiffs could not rely on class actions of which they were not putative class members or that did not include the claims filed in this lawsuit.

- Finally, even if plaintiffs could overcome all of these and other obstacles and persuade Massachusetts courts to adopt *American Pipe* in the context of this case, it is overwhelmingly likely that the courts would adopt a rule that would require plaintiffs to refile their lawsuits within one year from the dismissal of the class action at issue.

Even if plaintiffs had a reasonable chance to overcome any one of these hurdles, plaintiffs' chance of overcoming each and every one of these independent hurdles is so small that the likelihood the plaintiffs could persuade a court to toll the statute of limitations on their claims and to do so for the period required to make their claims timely is remote and theoretical at best. Such a remote and theoretical possibility does not constitute a reasonable basis for a claim. Accordingly, Indevus is fraudulently joined as claims against it are barred by the statute of limitations. If the Court has any doubt that Indevus is fraudulently joined, it should permit limited discovery directed solely to the limitations issue.

22.

15

Furthermore, the claims of plaintiffs who ingested only Pondimin and not Redux cannot be joined with the claims of plaintiffs who ingested Redux. Indevus had no involvement whatsoever in Pondimin; accordingly, plaintiffs who took Pondimin cannot join together with plaintiffs who took Redux in asserting claims against Indevus.

## This Case Satisfies The Other Requirements
## For Diversity Jurisdiction And Removal

23.

Based on the allegations and claims in the Complaint, the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is a civil action brought in a state court over which the United States District Court has original jurisdiction because there is both a diversity of citizenship between the properly joined parties and the amount in controversy meets the monetary requirements under 28 U.S.C. § 1332.

24.

All properly joined and served defendants in this case consent to this Notice of Removal. *See* Exhibit B. Fraudulently joined defendants do not have to consent to the Notice of Removal. *See Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 876 (1st Cir. 1983) ("A party fraudulently joined to defeat removal need not join in a removal petition, and is disregarded in determining diversity of citizenship.").

25.

The pending action is one that may be removed to this Court, and this Notice of Removal is filed pursuant to 28 U.S.C. § 1441 et seq.

16

26.

After the filing of this Notice of Removal, Petitioners will promptly give notice thereof to Plaintiffs and will file a true and correct copy of this Notice of Removal with the Superior Court of the Commonwealth of Massachusetts, Middlesex County.

WHEREFORE, Petitioners pray that this Notice of Removal be filed; that said action being Civil Action No. 2004 – 01232 in the Superior Court of the Commonwealth of Massachusetts, Middlesex County, be removed to this Court; and that no further proceedings be had with respect to those claims in the Superior Court of the Commonwealth of Massachusetts, Middlesex County.

Respectfully submitted this 25th day of May 2004.

/s/ Janice W. Howe_____
William A. McCormack  BBO #329580
Janice W. Howe BBO #242190
David Yamin BBO #562216
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
(617) 951-8000

*Counsel for Defendants Wyeth and Wyeth Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the within and foregoing NOTICE OF REMOVAL upon all parties to the above-captioned action by depositing a copy of same in the United States Mail in a properly addressed envelope with sufficient postage affixed thereto to ensure delivery to the following:

Edward J. Barshak (BBO No. 032040)
Michael S. Appel (BBO No. 543898)
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA 02114

Riley L. Burnett
Johnson, Burnett & Chang, L.L.P.
5005 Riverway, Suite 250
Houston, TX 77056

*Counsel for Plaintiffs*

Matthew J. Matule (BBO #632075)
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street
Boston, Massachusetts 02108

*Counsel for Defendants Indevus Pharmaceuticals, Inc. and Boehringer Ingelheim Pharmaceuticals, Inc.*

This 25th day of May, 2004.

/s/ Janice W. Howe_____

*Counsel for Defendants Wyeth and Wyeth Pharmaceuticals, Inc.*